Esteemed judges of the Ninth Circuit Court of Appeals, welcome to Fairbanks, Alaska, and the land of the midnight sun. We're honored to have this court in Fairbanks, and we appreciate it. And counsel, good morning. This is Mr. Johnson to my left, James Johnson. Well, the central issue, of course, is that this is a summary judgment type case. The district court clearly erred in its analysis, and there were questions of fact precluding entry of summary judgment. Of course, the question of facts is whether Barnett and Carson used false testimony and secured to secure a search warrant. It was this false testimony that set in motion the series of events that resulted in the damages to the Johnson's property and the emotional upset suffered by Mary Johnson. Mr. Stefanos, you said the district court erred in its analysis. The district court applied a Franks versus Delaware analysis of the affidavit in support of the search warrant. Are you contending that that was error to apply that Supreme Court case law? Your Honor, if it was error, then I'm going to. It's just a simple question. Yes or no, was it error to apply that Supreme Court authority? Well, they can apply that Supreme Court authority, but if your facts are in it, the district court said that if it took out the informant's information. Well, isn't that what Franks versus Delaware permits the court to do, to excise the contested information and then ask whether the remaining facts in support of the issuance of the search warrant still state probable cause? That's accurate. But once you excise the informant's information, there is no probable cause. OK, so you're not contesting the legal analysis. The district court proceeded on the correct legal prong, but it's the ultimate conclusion as to the sufficiency of the facts that you're challenging. Yeah, the analysis, yeah, after going to, after Franks. Because if we note, if you look at in the record, the court excerpt page 9, just an analog, just a little point there, the court found shortly before he was observed at 1008 Avenue residing, residence selling, shortly before he was observed. These agents didn't, if you look closely at the search warrant, I broke it down to the kind of the five minute, or two minute, five minute, 554. Two minutes, they see this guy who resembles Eugene Johnson, pull into Mr. Johnson's residence. Two minutes, he comes back out. Then he heads to 1008, he's at 1315, then he heads to 1008, that direction. Well, if you understand Fairbanks, this is on 23rd Avenue, it's simply three blocks as a crow flies, and not big city blocks. But so it's a 15 second drive. These agents who saw some van that didn't take their plates down and run that, that's where you use that absent, that Alaska Public Safety Network. We don't know that the van was registered to the sun? No. I mean, and of course, we're looking at that four corners of that affidavit too. But there's no statement. No, no statement in there. He ran the plate and it came back. No, and these are two federal agents. This case is against the state agents in this case. These two federal agents, this is information that Mr. Carson is putting in his affidavit. So he leaves, and five minutes later, these agents say he shows up at a location that's 15 seconds away. And there's where the discrepancy is going to. The next thing, as I said, the two minutes, the five minutes. Now it's 5.54 in the afternoon. This isn't something shortly thereafter. There's nothing in the affidavit that's shortly thereafter. So are you suggesting the van went somewhere else, or? We had to. Okay, before it happened. Unless the agents just went up to McDonald's or something, and then they came back, and five minutes later, they see the car parked down at this location. So that is one explanation, is it not? That they might have, the surveillance agents might not have been continuously staking out the residents of the- Yes, certainly. But that's important when you look at the affidavit. Not as opposing counsel. When they go and do the Frank's test, the way they do it in their brief at page 23, they say, later the same day, the copper van was still parked in front of 1008 23rd Avenue when Gene Johnson sold 1.5 ounces. Well, we don't know the sequence. You're saying it should have taken 15 seconds to travel three blocks? It's probably 20 seconds. We're looking at- I don't know what to do with the discrepancy here. I mean, that's all. I mean, you're talking, he's at the corner of Wilson and 23rd. He has to go up to Turner, which is, he's at the corner, and then there's one block would be the 1,200, one block would be the 1,100. Then he's right there. Right. So it's 10, that's- I'm not familiar with the neighborhood. I don't know if there are stop signs. I don't know if there are lots of traffic. Yeah, and I don't know- Kids playing in the street. At 554 that night, when the informant went in and was wired, there's the van sitting there, okay? But there's no, it's a disconnect between what happened up at 1350. If you read that search warrant very closely, the affidavit. But everybody's, the judge, the district court judge is saying, well, shortly thereafter, later, and then the opposing counsel saying later that same day. So that's, that doesn't hold water. Maybe I could change the look at this just a little bit. What evidence do I have in this record that Officer Carson made out this affidavit in an intentionally false manner? The affidavit from the confidential informant stating that I never- Intentionally false. It could be reckless also required, but I mean, recklessness will get us there. In bad faith. What evidence do I have of that? Well, your honor, if somebody comes and says, I never told this officer that, and the officer goes to a judge and says, this guy told me this, and that's why you need to hit this house. That's why we need a secret search warrant, a no knock for this house. Well, given that this particular person you're relying on so, so arduously changes his mind halfway through, I can understand where you go that might be a summary judgment about some things, whether it really was or whether it didn't happen. That might be a summary judgment, because he changes his mind twice. But I'm not talking about whether factually it was right or not now. I'm talking about what did Officer Carson, what evidence is there that he did something in bad faith? That's more than just it could be one way, it could be another. Or intentionally false, that's more than it could be one way or it could be another. Or reckless, that's more than it could be one way, it could be another. That's got to give me something more in that record. So I wanted you to maybe talk about that. The testimony that he gave, there's no testimony here. The affidavit that he gave, the- So the affidavit is the only thing you got? Well, no, the affidavit- The fact that he gave a contra affidavit thereafter is just fine. On we're not talking about now what really happened. We're talking about a standard for reckless, intentionally false, or bad faith. And you're going to rely on that because if that's it, I understand. Well, the affidavit he gave was false to the district court judge, Judge Funk. That was not a true affidavit based on what we know from the affidavit of the constitutional informant. Then there is, like the court has said, there is a competing affidavit. And these competing affidavits establish a question of fact and raise a credibility issue. A question of fact as to what really happened, but I'm not sure that it raises a question of fact as to the questions I ask you. That's why I wanted you to think about it and talk to me about that. Well, I think it's reckless if in fact- You think? Give me a good case that says that. Give me a good case in Alaska or on the Ninth Circuit that suggests that just a question of fact about what really happened says that the officers are reckless in bad faith and false. Give me your best case for that, Counselor. The best case, I think it's common sense. Oh, I see, okay. Common sense tells us that if I falsely give information to a neutral and detached magistrate or judge, then that's bad faith. That is reckless. Okay. Okay. Also, what everybody is relying on to hit this House is the fact that this information from the Federal agents, also that the fact that this address in absent. This is our Alaska Public Safety Network. It's important there, if we look at the supplemental excerpts at page 40, who takes care of absent? Who inputs absent? It's law enforcement. And in there, we look in this resident address 13, 15, 23rd says it was last changed on November 10th, 2005. Excerpt page 40. So is that, did they just put that in there just prior to going in and getting the search warrant? I mean- Is there any evidence of that? I mean, I read that to mean that as of that date, that was what the address was that was shown in the Public Safety Information Network. No, they ran that absent on November 22nd. What it shows is the last change of that address as November 10th, 2005. Yeah, but I mean- So somebody just- It's pretty close in time, isn't it? Well, the House, the by was in 11-8. I'm not sure I'm following your argument. Well, you put in- To me, that suggests- If you get into absent, excuse me, if you get into absent, somebody inputs you into absent. This is a criminal network. Nobody's allowed it except for the- I read the newspaper article while we were down there. So that is inputted by police officers are them. They had evidently included it on November 10th. That's what the evidence establishes on excerpt 40. I'm still not understanding your argument. Are you arguing that it was a setup by the police that they- These are questions of fact. When you have- They're questions of speculation in counsel's mind. But the only fact I have in front of me is that as of November 10, 2005, Aspen showed the parent's address as Eugene's current residence. That's all I know. No, as of November 22nd in absent. Okay. That's when absent was run. Right. Okay. Goes in front of the magistrate on November 25th. Your argument is that somebody must have tinkered with the computer- Well, no, they don't tinker. Somebody has to input computers or input information. That information was imputed on November 10th, two days after the buy at this house on 1008. I still don't see the contested issue of fact. I mean, the fact is that the computer showed that he was using his parent's address as listed as his current residence address. Yeah, probably. Well- The magistrate relied on that fact when he issued the- when he found probable cause. They're saying the most current street slash extra line mailing address, 13-15-23rd, last changed November 10th, 2005. They're taking a police document that they've inputted and given that to the judge. So, I mean, that- those are- and I'm- he has said in his affidavit, Mr. Johnson, that he doesn't reside there. When he was in front of the district court, and that's another thing the district court relied on very heavily, was the fact of- on August of 2006, nine months later, that he got up under oath and said, I live at 13-15-23rd. Well, of course, he said, I don't reside anymore at 10-08. That's what he testified under oath. I don't- that is my residence. And they asked him, the prosecutor said, well, didn't you go over and didn't get drug- No, never happened. That's my parent's house. I don't- so, the court relied- because that court happened to be handling that U.S. v. Collette, the case that was ongoing. So- So, you want to save some time for- Yes, I will save some time. Thank you. Okay. Let's hear from the state. May it please the court. David Jones for Officers Wall, Carson, and Barnett. On the issue of the judicial deception claim, there was probable cause, even without the challenge statements, using the remaining information in the search warrant affidavit. My opponent has referred to the Alaska Public Safety Information Network printout. The date does indicate November 10th, 2005. There was no evidence about that. There was no challenge to the veracity of that information in the network printout. In addition, if you look carefully at that document, there's also, in parentheses, references to vehicle registration. There's no evidence that that was the reason for that new input of an address. It's a reasonable inference to draw, but there was no evidence on that point below. This printout is one of the many things in the affidavit that tied the criminal activity to that address at 1315 23rd Avenue. Well, one of the things that Counselor's arguing about is within five minutes it was parked at 1008. He says you can't get there in five minutes. Your Honor, it may not take five minutes to get there, but it may be that the agents who were conducting the surveillance waited before they followed the copper-colored van that they saw pull into the driveway at 1315. Perhaps they wouldn't be detected. There is no evidence on that point, looking at the four corners of the affidavit, but it would be perfectly reasonable for agents not to immediately tail the suspect to 1008. What they did see was a copper-colored van pull into the driveway at 1315. Someone who looked like Eugene Johnson get out and go into the backyard, come back to the van two minutes later, and then take off in the direction of 1008. Five minutes later, they saw that copper-colored van in front of the dwelling at 1008. Then later that day, when the controlled buy took place, they saw that same copper-colored van, and the affidavit says that same copper-colored van parked in front of the dwelling at 1008. That's an additional piece of evidence from the affidavit that ties the criminal activity to 1315. Where Johnson sold the 1.5 ounces of cocaine to the confidential informant, correct? That's correct, Your Honor. In addition, the confidential informant That's my understanding as well that the cocaine seemed to be from the corner of a brick. That's correct, Your Honor. And that means? That means, Your Honor, it suggests, it provides a reasonable inference that there was more to it, that there's more cocaine somewhere else. And that's confirmed by the confidential informant's information that was not challenged, that he saw Eugene Johnson put a similar amount into a cereal box in the garage at 1008. In addition, the confidential informant informed Investigator Carson, as indicated in the affidavit, that he thought that Eugene Johnson lived with his girlfriend at 1008 and that Eugene's father lived at 1315. Well, that also suggests a connection between the two residences, because this wasn't a stranger's residence. This was his father's, someplace he could go without suspicion, someplace where he had a right to go without being challenged. And then, as I understand it, the affidavit says the confidential informant is accurate in the past. The confidential informant told the officers that he'd been dealing narcotics for four to five years and told the CI that he'd sold as much as five ounces of cocaine in the past, correct? That's correct. And at last, on November 22nd, the confidential informant confirmed that Johnson was still selling cocaine from his residence and his major source of income was from that. That's correct, Your Honor. He also estimated that Eugene Johnson was selling as much as a thousand grams of cocaine in a good week. That, too, suggests that there might be more cocaine elsewhere. Now, as you mentioned, because that corner of, or the cocaine that the confidential informant purchased appeared to be from the corner of a brick of cocaine, it's important to integrate the information from Investigator Carson, who said that based on his training and experience, he knew that bricks of cocaine were usually stamped out in 1,000-gram units. And also, based on his training and experience, he knew that those who dealt in amounts of illegal drugs, such as those that Eugene Johnson was supposed to be dealing in, tended to keep their drugs and money in separate places and often used separate residences for that purpose. Counselor, if I look at this and I'm trying to determine probable cause, and really all I'm doing is looking over the back of the good judge who determined probable cause, and I have this kind of evidence in front of me, what is my standard of review in reviewing what the magistrate does? In this setting, Your Honor, you're reviewing them de novo because there was a grant of summary judgment. Do I have to give any deference to them? Do I have to give any authority to them since they deal with this on a regular basis? Not with respect to the finding of probable cause, Your Honor. We look to the four corners of the affidavit, having eliminated the challenge statements. So, in essence, we can re-weigh the facts as if we were the issuing magistrate? That's the way I understand the Ninth Circuit's precedent, Your Honor, looking at Chisholm and others. You mentioned the fact that the confidential informant recanted on his first affidavit. That's relevant here because although the officers have not emphasized the first part of the judicial deception test, that is, whether there was intentional or reckless deception, the fact that the confidential informant recanted his earlier affidavit calls into question whether the Johnsons really have made a substantial showing of intentional or reckless deception with respect to Investigator Carson. Well, the reason I ask those questions is for a claim for judicial deception, you don't only show that but for dishonesty the search would not have occurred, which is where we spent the majority of what we have here, but we also have to look as whether the officers had a deliberate falsehood or a reckless disregard for the truth, and I'm looking at those facts as well. Correct, Your Honor, and particularly with respect to Officer Barnett, it's easy to imagine, although there's no evidence in the record that this is what happened, that an officer could ask an individual, what's your address? Get the response, 1315 23rd Avenue, because in the person being questioned's mind, that's the mailing address. And then for the officer to turn around and say, he told me his residence was 1315, without any intent to deceive, without any reckless disregard for the truth, just some imprecision in describing the information that the officer received. But again, that's not the issue here. And the Liston decision makes it a little difficult for us to argue on that first element of the judicial deception claim. With respect to attorney's fees, this Court's precedent is clear. Because the Johnsons did not file a new or amended notice of appeal, they cannot bring to this Court, for review, the District Court's award of attorney's fees. And unless there are any other questions, I have none. I think not. Thank you very much. Thank you. Mr. Stefvich, you'll have the last word. Well, what heightens this case is the fact that they did hit 1008. They went in, and that's where the search warrant needed to go. But when they hit 1315, why? And we look again to the four corners of that affidavit, and we excise the information from the informant that is false, based on his affidavit. They don't have the probable cause. And that's why it has to be looked at de novo, and it has to be looked very closely. It's like the parole evidence rule, in the sense that you take the four corners of the document, and that's what is left, not before, not after. And Aguilar v. Texas, as we've set out, is whether there is probable cause of the issue of search warrants. But I thought Gates v. Illinois tells us that we still consider totality of the circumstances in weighing the remaining evidence. Isn't that the correct analysis? Yeah, and I would agree, Your Honor, but there is nothing left. When you hit a house like that on Southside, based on the information that they have, once the informant is gone, there's nothing. It is speculation. It is a violation of somebody's constitutional rights. And if we allow that to occur in this country, we're in trouble. Thank you, Mr. Skepovich. The case just argued is submitted.
judges: Tashima, Tallman, Smith